WINTON MOTOR CARRIAGE CO. v. CURTIS PUB. CO.

(District Court, E. D. Pennsylvania. June 1, 1912.)

No. 863.

INJUNCTION (§ 5*)—PRELIMINARY INJUNCTION—GROUNDS.

> While under exceptional circumstances a court of equity may issue a mandatory injunction, even at a preliminary stage of the litigation, where it is necessary to restore or preserve a status until the controversy can be fully heard on the merits, it will not do so to compel the specific performance of an executory contract, the scope and terms of which constitute the subject-matter in dispute and are fairly open to controversy.
>
> [Ed. Note.—For other cases, see Injunction, Cent. Dig. § 4; Dec. Dig. § 5.*]

In Equity. Suit by the Winton Motor Carriage Company against the Curtis Publishing Company. On motion for preliminary injunction. Denied.

Crisp, Randall & Crisp, of New York City, for complainant.
John G. Johnson, of Philadelphia, Pa., for defendant.

J. B. McPHERSON, Circuit Judge. It is no doubt true that under exceptional circumstances a court of equity will issue a mandatory injunction even at a preliminary stage in the litigation. But heretofore—so far as appears from the cases cited—the writ has been issued for the sole purpose of preserving or of restoring a status in order that a dispute might be fully heard and the rights of the parties determined upon final hearing. Here there is no status to be preserved or restored—the contract in question being still executory—and therefore the pending motion asks the court to take a long step in advance; for a preliminary injunction is now requested that shall decide the whole of a controversy at the very beginning of a suit, and shall enforce specifically a contract whose terms and scope are still undetermined. Concededly an agreement of some kind was made, but its precise terms and scope are the subject of dispute. A brief statement of the facts will make the situation more clear.

The defendant publishes the Saturday Evening Post in the city of Philadelphia. This is a weekly journal of very large circulation, and, by reason of the social and financial standing of many of its readers, it is an unusually valuable medium for advertisements of automobiles. About a year ago the defendant agreed with the plaintiff, a manufacturer of high standing, to publish such an advertisement in the issue of June 29, 1912. When the contract was made, neither party knew what the contents of the advertisement would be. In May, 1912, the copy was submitted to the defendant, and was rejected, after conference and consideration, on the ground that it contained misleading statements and reflected injuriously upon competing manufacturers. For this reason the defendant regarded it as obnoxious to one of the journal's rules, which is averred to have been well known to the plaintiff. Thereupon the pending bill was filed,

and the court is now asked to compel the defendant to publish the advertisement without change on the foregoing date. It is therefore apparent, I think, that the parties do not agree concerning the scope of the contract. The plaintiff asserts that (within certain decorous limits) it was entitled to print whatever it pleased, while the defendant asserts that it was only bound to publish such matter as complied with its rules, and that the plaintiff was aware of these rules and knew that the copy must conform thereto. It was also made clear at the hearing that the parties do not agree concerning the characteristics of the proposed advertisement. The plaintiff took the position that its statements are fair and accurate and reasonable, while the defendant contended, and offered some evidence to show, that these statements are vague, unreasonable, inaccurate, and not capable of being verified. In this situation, it is plain, I think, that before the order to print can be made I must accept the plaintiff's view concerning the scope of the contract, and must also accept the view that the advertisement is free from objection, even when tested by the defendant's rules. And I must then go on to decree specific performance of the contract at the very beginning of the suit, instead of at the end—where alone such a decree is usually entered—and, moreover, must do this without giving the defendant an opportunity to be heard upon the points in dispute by the regular and orderly method of procedure. I am not prepared to take this step. There is no doubt that the advertisement cannot appear on June 29th unless the order now asked for, is made at once—for, as I understand, the issue of that date will go to press on June 5th—and therefore that to refuse the order amounts to a denial of relief in case the facts should ultimately appear to be as the bill avers them. But I can only say in reply that, while this is true, the fact does not put the case into a class by itself. What has happened is simply this: Like many other unsuccessful suitors, the plaintiff has unfortunately not been able to present a case that would justify a chancellor in acting—and especially in taking the unprecedented course that is now urged.

The motion is refused.